UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL C. WILLIAMS,<br><br>  Plaintiff,<br><br>  v.<br><br>GORDON R. ENGLAND, Secretary, Department of the Navy; DONALD H. RUMSFELD, Secretary, Department of Defense,<br><br>  Defendants. | CASE NO. C05-1585C<br><br>ORDER |

This matter comes before the Court on Defendant England's[1] Motion To Dismiss and/or for Summary Judgment (Dkt. No. 14), Plaintiff's Opposition (Dkt. No. 20), and Defendant's Reply (Dkt. No. 23). The Court has considered the papers submitted by the parties and determined that oral argument is unnecessary. The Court hereby finds and rules as follows.

//

---

[1] The Complaint names both the Secretary of the Navy and the Secretary of Defense as Defendants. However, Plaintiff was employed by the Department of the Navy and not the Department of Defense. Plaintiff does not attempt to argue that the Secretary of Defense is a proper Defendant. Moreover, under 42 U.S.C. 2000e-16(c), the proper Defendant in this matter is the Secretary of the Department of the Navy. (*See also* Def.'s Reply Ex. 1 (final decision on EEO complaint).) The current Secretary of the Navy is Donald Winter.

ORDER – 1

## I. BACKGROUND: FACTS AND ALLEGATIONS

Plaintiff has brought two retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; a hostile work environment claim under Title VII and the Washington Law Against Discrimination ("WLAD"), WASH. REV. CODE 49.60.180; and a tort claim for emotional distress. (Compl. (Dkt. No. 1) ¶¶ 4.1–4.4.) Defendant moves to dismiss these claims and/or for summary judgment on various grounds.

From July of 2002 through September of 2005, Plaintiff worked as a grade GS-5-0083 civilian police officer for the Department of the Navy's Security Department at Naval Station Everett. Plaintiff is a Caucasian male and alleges generally that he has been targeted because he wrote a letter to Senator Maria Cantwell and voiced grievances about his work environment and because he supported an African-American officer and coworker, Howard Huff, as they both challenged a racially-charged work environment and allegedly discriminatory employment practices. The chain of command over Plaintiff on a given day would include a military watch commander with authority over both military and civilian personnel, then a shift lieutenant, then civilian supervisor Sergeant Armando Batinga (a Filipino male), then military Assistant Security Officer Cecil Williams (an African-American male), and finally Security Officer Lieutenant Scott Pheasant, whose race is not described in the papers. The pertinent facts are as follows.

On April 7, 2004, Plaintiff was on duty with Huff when they were directed by their supervisor (Chief Erbe) to make contact with a sailor who was riding a bicycle on base without proper reflective gear and to bring him to their supervisor's location. Huff demanded to see the biker's military identification card, which the biker showed but did not hand over. The biker then refused to surrender the identification card, as Plaintiff alleges is required. Plaintiff and Huff arrested the biker, handcuffed him, and put him into their patrol vehicle for transport to Chief Erbe. Plaintiff alleges that he and Huff followed standard operating procedure at all times. (*See* Pl.'s Opp'n, Pl. Williams Decl. 3–4.) Nevertheless, the Executive Officer of the ship—USS Shoup (DDG 86)—to which the arrested biker was

ORDER – 2

attached filed a complaint regarding this incident.  Pheasant assigned Master-at-Arms Chief Petty Officer Welch to investigate.  (*See* Def.'s Mot., Cecil Williams Decl. 2.)

An initial interview of Plaintiff took place on April 16, 2004.  Also on this date, Plaintiff signed an acknowledgment form, which indicated that he had been informed and understood that the investigation was administrative, not criminal, and that information provided and evidence gained would not be used against him in a criminal proceeding unless he knowingly provided false information.  (*Id.*, Mittet Decl. Ex. B (Employee Information and Acknowledgment Form).)  Plaintiff answered questions at this initial interview and apparently gave a written statement as well.  (*Id.* Ex. A (Pl.'s Deposition) at 13–14.)  Because Plaintiff's statement allegedly contained inconsistencies, Plaintiff was called back for a second interview on April 21, 2004.  (Def.'s Mot., Cecil Williams Decl. 2.)  Despite that Plaintiff knew that this was an administrative investigation and had been informed that only knowingly giving false information potentially could lead to criminal charges, Plaintiff claims that he felt that answering any questions whatsoever could subject him to criminal prosecution.  (Pl.'s Opp'n, Pl. Williams Decl. 4–5.)  He therefore insisted on having an attorney present before he would cooperate.  (*Id.*; Def.'s Mot., Cecil Williams Decl. 2–3.)  Ultimately, he answered no questions during the second interview.  (*Id.*)

Due to Plaintiff's failure to cooperate in the administrative investigation, he was "downloaded" during the pendency of the investigation, which meant that he was assigned to administrative ("desk") duties and was not allowed to carry a firearm.  (Def.'s Mot., Cecil Williams Decl. 3.)  Plaintiff's salary and benefits were not affected, however.  (*Id.*)  When the investigation concluded, Plaintiff was again "uploaded" and returned to active police work.  (*Id.*)  The "downloading" began in April 2004 and ended in July 2004.  (*Id.*)  The eventual result of Plaintiff's failure to cooperate in the investigation was a "Letter of Reprimand" issued to Plaintiff on July 22, 2004, around the time he was "uploaded."  (*Id.*, Mittet Decl. Ex. D (Letter of Reprimand).)  It is undisputed that the Letter of Reprimand was solely due to failure to cooperate in the administrative investigation and that there was absolutely no consequence imposed on Plaintiff for the underlying incident involving his and Huff's encounter with the biker.  (*Id.*,

ORDER – 3

Cecil Williams Decl. 3; *id.*, Mittet Decl. Ex. A at 19–21.) Before issuing the Letter of Reprimand, Batinga issued Plaintiff a Proposed Suspension, dated June 30, 2004, wherein he proposed that Plaintiff be suspended for failure to cooperate in the administrative investigation. (*Id.*, Mittet Decl. Ex. C (Proposed Suspension).) This letter gave Plaintiff until July 14, 2004 to respond orally or in writing. A meeting occurred on July 15, 2004. (*Id.* Ex. A at 19.) Following that meeting, Pheasant issued the Letter of Reprimand, which is a lesser form of discipline than the originally proposed suspension. (*Id.* at 19–20.)

The administrative investigation, "downloading," and ensuing Letter of Reprimand are the basis for Plaintiff's two retaliation claims. Plaintiff claims that he was retaliated against for two reasons: (1) sending a letter to Senator Maria Cantwell and voicing grievances about working conditions and (2) supporting Huff with respect to how Huff was allegedly treated on the base. As to the first reason, it is undisputed that on February 17, 2004, Plaintiff wrote a letter to Senator Maria Cantwell. (*Id.* Ex. F (Pl. Williams Letter to Senator Cantwell).) In his approximately two-page letter, Plaintiff complains of disregard for the safety of personnel who have exhibited suicidal tendencies, threats of violence against others, and inappropriate behavior while on duty. Plaintiff also alleges "illegal investigations" of personnel without "probable cause or reasonable suspicion" and a "hostile work environment issue" arising out of allegedly inappropriate access to keys for base buildings and offices. The letter goes on to allege "log book" protocol violations and mentions in this discussion "Officer Devilla" who apparently filed "a grievance for discrimination" and was investigated in retaliation. Plaintiff then complains about payroll mistakes and scheduling disputes and discontent. Finally, the letter asserts that "[a]nother issue is discrimination" and proceeds to describe this "discrimination" in terms of how military personnel are treated better than civilian personnel. (*Id.*) Nowhere does this letter mention race or ethnicity or any other protected status with respect to allegations of discrimination. Moreover, when questioned in his deposition about the letter, Plaintiff confirmed repeatedly that the "discrimination" to which he was referring was about treatment of military versus civilian personnel. (*Id.* Ex. A at 15–17.)

ORDER – 4

Senator Cantwell apparently responded by writing to the Navy in a letter dated February 27, 2004, although this letter is not part of the record. According to Defendant, her letter was received at Naval Station Everett on April 30, 2004. Specifically, Senator Cantwell's letter is mentioned as being dated February 27, 2004 and received on April 30, 2004 in a responsive letter written by Captain D.L. Squires on May 12, 2004. (*Id.* Ex. G (Squires Letter to Senator Cantwell).) Based on this notation of the date Senator Cantwell's letter was written, Plaintiff concludes in his brief that his own letter to Senator Cantwell "was forwarded" to Squires at Naval Station Everett on February 27, 2004 (Pl.'s Opp'n 2) and that Plaintiff's superiors at Naval Station Everett therefore knew about his letter to Senator Cantwell "at least" by February 27, 2004 (*id.* at 10). However, Plaintiff does not assert any personal knowledge of this alleged February 27, 2004 date of notice in his deposition or his Declaration in opposition to Defendant's motion. In response, Defendant asserts that Squires's statement in his own letter that Senator Cantwell's letter was received on April 30, 2004 is correct and therefore that Plaintiff's superiors were first made aware of Plaintiff's letter to Senator Cantwell on April 30, 2004. In the end, the only actual evidence on the record regarding the date upon which Naval Station Everett command had notice of Plaintiff's letter to Senator Cantwell is the May 12, 2004 letter from Squires. Plaintiff has submitted no evidence to contradict the notice date of April 30, 2004 in support of his allegation of earlier notice.

Plaintiff's complaints regarding military–civilian treatment (as discussed in his letter to Senator Cantwell) not only form the basis of his first retaliation charge, but also his hostile work environment charge. (Def.'s Mot., Mittet Decl. Ex. A at 24–26 (generally alleging "hostile work environment" due to "failure to salute" and the "letter of reprimand" and discussing a "tense and uptight" environment "because of conflicts between military and civilians").) When asked at his deposition if he was subjected to a hostile environment because of his gender, Plaintiff responded: "Because I was a civilian. It's common practice that if you file a complaint or anything in the department that you can expect to be intimidated." (*Id.* at 26.) In support of his theory of different treatment for military versus civilian

ORDER – 5

personnel, Plaintiff cites an incident that occurred on April 8, 2004, just a day after the incident between Plaintiff, Huff, and the biker, where a military police officer (MA1 Keoloha) allegedly choked and beat someone he was arresting, but was not reprimanded in any way. (*Id.* at 28–30.) Plaintiff met with Batinga about his concerns in this regard on April 12, 2004. (*Id.* at 30.) Also on April 12, 2004, another officer (Wernau) overheard Williams say "I sent two people up the river . . . [and] I have no problem sending somebody else up the river." (Pl.'s Opp'n, Moody Decl. Ex. (Wernau Deposition) at 7.) However, Wernau has no idea to whom Williams was referring. (*Id.* at 9–10.) Wernau also testified regarding references around the base to "The Black Days," which he explained refer to tense times on the base with the military staff on "one side" and the civilian employees on the "other side," where the civilians have lower status and must do whatever the military personnel order. (*Id.* at 13–14.)

The second retaliation claim stems out of Plaintiff's undisputed support lent to Huff, as follows. On January 26, 2004, Huff overheard another Navy member (MA2 Maxey[2]) who was on the telephone say the "N-word," which offended Huff because he felt that the epithet was directed at him. (Pl.'s Opp'n, Huff Decl. 1–2.) On February 18, 2004, another military member (EN2 Milward) referred to Huff as "Leroy," which is considered derogatory in the African-American community. (*Id.* at 2.) Huff reported these incidents to Sergeant Batinga and Assistant Security Officer Williams on February 19, 2004. (Def.'s Reply, Cecil Williams Decl. 1–2.) The following day, February 20, 2004, Williams held a meeting that included Maxey, Milward, watch commanders, a union representative, Batinga, and Huff. (*Id.*) Maxey and Milward admitted making the comments and apologized to Huff, who accepted the apologies. The Navy later disciplined Maxey. (*Id.*) Plaintiff was not at the meeting, but he expressed dismay about these incidents to Williams and his other superiors. (Pl.'s Opp'n, Pl. Williams Decl. 1–2; *id.*, Huff Decl. 2.)

On May 26, 2004, Plaintiff participated in a meeting with Officer Huff and others at the base, as

---

[2] This individual is also referred to as "Massey."

ORDER – 6

well as local NAACP president Carl Mack, to discuss the reasons that Officer Huff had, by then, been fired. (Def.'s Mot., Mittet Decl. Ex. A at 21–24.) Huff had received a disciplinary sanction in connection with his alleged failure to reduce to the lowest possible level the conflict with the biker whom he and Plaintiff had arrested on April 7, 2004. (Pl.'s Opp'n, Huff Decl. 3.) Huff was terminated thereafter for this and other reasons. He also filed a lawsuit against the Navy, which later settled. (*Id.*)

Despite his earlier testimony that his hostile work environment claim related only to military–civilian treatment, in response to the instant motion, Plaintiff asserts that his hostile work environment claim is race-based as well.

Plaintiff initiated contact with the Navy EEO office on May 20, 2004 and filed an informal complaint with the Navy EEO on June 7, 2004, complaining about the administrative investigation that had occurred in April, during which he had been "downloaded," and listing his letter to Senator Cantwell regarding "discriminatory activities in work environment." (Def.'s Mot., Mittet Decl. Ex. E (EEO Complaint (Informal)).) Following his receipt of his Letter of Reprimand, he filed a formal complaint with the Navy EEO, dated July 26, 2004. (*Id.* Ex. H (Formal Complaint of Discrimination).) In it, he added the facts that he had participated in the May 26, 2004 meeting regarding Huff, that he had stood by Huff, that he had received the Letter of Reprimand, and that he had complained about Keoloha's alleged assault on an arrestee. (*Id.*) Reprisal was the only basis for discrimination indicated on Plaintiff's formal complaint. (*Id.*) Plaintiff also testified in his deposition that "reprisal" was the only basis of his EEO complaint. (*Id.* Ex. A at 15.) The Navy EEO issued its final decision on June 16, 2005. (Def.'s Reply, Ex. 1 (final decision on EEO complaint).)

Defendant now moves (1) for summary judgment on both retaliation claims; (2) to dismiss Plaintiff's state and federal hostile work environment claims for failure to exhaust administrative remedies; and (3) to dismiss the negligent infliction of emotional distress claim for lack of subject matter jurisdiction. Plaintiff opposes dismissal of any claims.

//

ORDER – 7

## II.   ANALYSIS

### A.   Legal Standards

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250. In order to defeat a motion for summary judgment in an employment discrimination case, the nonmoving party must make more than conclusory allegations, speculations or argumentative assertions that material facts are in dispute. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

The United States and its agencies have sovereign immunity from all lawsuits unless Congress expressly waives that immunity. *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999); *United States v. Shaw*, 309 U.S. 495, 500–01 (1940). Any legislative waiver of immunity must be strictly construed, "in favor of the sovereign." *Blue Fox*, 525 U.S. at 261; *see also United States v. Sherwood*, 312 U.S. 584, 590 (1941). Failure to follow statutory filing requirements may be a bar to the sufficiency of a claim, as in the case of timely filing a Title VII lawsuit following an EEO decision. *See Zipes v. Trans World Airlines*, 455 U.S. 385 (1982) (holding Title VII's timeliness requirements subject to waiver and equitable tolling and not jurisdictional); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96

ORDER – 8

(1990) (applying same principles of equitable tolling of timely filing requirements to suits against the federal government as would be applied to suits between private litigants). Alternatively, failure to exhaust administrative remedies may be fatal to a federal court's subject matter jurisdiction altogether, as in the case of failure even to file an EEO complaint before filing a Title VII suit, *see Lyons v. England*, 307 F.3d 1092, 1103–04 (9th Cir. 2002), or failure to exhaust administrative remedies under the Federal Tort Claims Act, *see Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992). The particular exhaustion bases to dismiss various claims are discussed in more detail *infra*.

**B.     Motion for Summary Judgment on Retaliation Claims**

With respect to retaliation, 42 U.S.C. § 2000e-3 makes it unlawful to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. Title VII prohibits discrimination based on "race, color, religion, sex, or national origin" against federal employees. 42 U.S.C. § 2000e-16(a). The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework governs retaliation cases. Under *McDonnell Douglas*, Plaintiff can survive summary judgment only if he meets his initial burden to set forth a prima facie case of unlawful discrimination. 411 U.S. at 802. To make out a prima facie case of retaliation, Plaintiff must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994). The burden then shifts to the employer to articulate some legitimate, non-retaliatory reasons for any adverse actions taken. *McDonnell Douglas*, 411 U.S. at 802; *Steiner*, 25 F.3d at 1464–65. If the employer meets this burden, the presumption created by Plaintiff's prima facie case of unlawful retaliation "'simply drops out of the picture.'" *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). After Defendants meet their burden and the presumption disappears, the burden shifts back to Plaintiff. At this next stage, in order to survive summary judgment under the *McDonnell Douglas* framework, Plaintiff must produce sufficient

ORDER – 9

evidence to raise a genuine issue of material fact as to whether Defendant's proffered nonretaliatory reason is merely a pretext for retaliation.  *Steiner*, 25 F.3d at 1465; *see also Wallis*, 26 F.3d at 890. There are two ways Plaintiff may show pretext—either (1) directly, "by showing that unlawful [retaliation] more likely motivated the employer" or (2) indirectly, "by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Dominguez-Curry*, 424 F.3d at 1037; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

In proffering evidence on summary judgment, an employee's evidence may be either direct or circumstantial.  *Desert Palace*, 539 U.S. at 101–02.  Direct evidence is that, which, "'if believed, proves the fact [of retaliatory motive] without inference or presumption.'" *Dominguez-Curry*, 424 F.3d at 1038 (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1999)).  When an employee relies on *circumstantial* evidence, which requires an inferential step, such circumstantial evidence must be both *specific* and *substantial*.  *Id.*  Plaintiff relies on circumstantial evidence in this case, so he must produce specific and substantial evidence in opposing summary judgment.

### 1. Prima Facie Cases

As noted *supra*, Plaintiff's prima facie cases of retaliation depend on him showing that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action.  His retaliation claims are for (a) writing a letter to Senator Cantwell and voicing analogous grievances on the base (Compl. ¶ 4.1); and (b) demonstrating support for Huff (*id.* ¶ 4.2).

#### a. Letter to Senator Cantwell and Associated Grievances

As to his claim of retaliation arising out of his letter to Senator Cantwell, as well as any times he raised concerns to military staff that track the points made in his letter to Senator Cantwell, Plaintiff alleges that he was unfairly investigated, "downloaded," and then given the Letter of Reprimand as a result.  With the exception of Plaintiff's conversation on April 12, 2004 with Batinga, no dates are given

ORDER – 10

for conversations with personnel about issues also raised in the letter to Senator Cantwell. The chronology of events vis-a-vis the letter is notable, however, as is the content of the letter. First, the letter to Senator Cantwell complained of discrimination against "civilian" personnel. Plaintiff never mentions discrimination based on any protected class. While he argues that racial discrimination is insinuated by his reference to "Officer Devilla," nothing in the letter actually indicates Devilla's protected status or actually refers to actionable discrimination. It is only now that Plaintiff emphasizes that Devilla is Native American. Likewise, his April 12, 2004 conversation with Batinga was about how military personnel are treated better than civilians. Second, Plaintiff's reference to a "hostile work environment" in the letter refers to who on the base had access to keys of entry to various buildings and offices. Again, this has nothing to do with harassment due to a protected status. Plaintiff's own deposition testimony underscores that writing the letter to Senator Cantwell and his associated grievances did not constitute "protected activity" due to any Title VII activity they embodied.

As to the second element, the Court recognizes that Plaintiff's "downloading" was likely an adverse employment action, despite that it was not accompanied by a reduction in salary or benefits. The Ninth Circuit has found that reductions in status may be sufficiently adverse and that the only requirement is that the action be "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1240–44 (9th Cir. 2000). The same applies to the Letter of Reprimand, which arose out of the investigation.

However, even if the Court could find the letter to Senator Cantwell and associated grievances to be protected, and accepting that Plaintiff faced adverse employment action, there is no evidence of the third element—a causal connection between the letter and the administrative investigation, the "downloading," or the Letter of Reprimand. As a purely temporal matter, there is little, if any, evidence that Plaintiff's writing of the letter could have caused either the administrative investigation (begun on April 16, 2004) or the "downloading" (begun before the end of April), because both of those events occurred before Defendant claims it had notice of Plaintiff's letter on April 30, 2007. Though the Squires

ORDER – 11

letter mentions that Senator Cantwell's letter to the Navy was *dated* February 27, 2004, Plaintiff presents no additional evidence to support his assertion that February 27, rather than April 30, is the notice date. Nor does Plaintiff suggest who allegedly forwarded the letter or how it was routed. Regardless, even taking Plaintiff's assertion as true that his superiors at Naval Station Everett had notice on February 27, 2004 that he had written Senator Cantwell, this, without more, is insufficient to constitute "specific and substantial evidence" of causation. The record is completely devoid of any suggestion that any one of Plaintiff's superiors (a group that included both civilians and military personnel) was upset that he wrote the letter or complained about conditions for civilians on the base and then set out to retaliate against him by starting the investigation, "downloading" him, or ultimately issuing the Letter of Reprimand. This claim amounts to conjecture about actions taken in "retaliation" for activity that does not fall within Title VII's coverage.

### b.     **Demonstration of Support for Huff**

As with the foregoing claim, Plaintiff alleges that he was unfairly investigated, "downloaded," and then given the Letter of Reprimand as a result of his demonstrated support for Huff. Assuming that the first element of the prima facie case—protected activity—is met because Huff was protesting racially-motivated discrimination or harassment, and assuming that the second element—adverse action—is met for the same reasons set forth *supra*, the Court finds that the third element—causation—is questionable at best. Again, Plaintiff submits no evidence beyond his conclusory allegations that anyone was upset with him for supporting Huff. On the contrary, a meeting was held to clear the air about why Huff was fired. Before that, a meeting was held (which Plaintiff did not attend) to allow Huff and his superiors to confront the two coworkers following their derogatory utterances in Huff's presence and directed at him. One of the offenders was disciplined. Nevertheless, establishing the prima facie case on this claim is less of a stretch than with respect to the letter to Senator Cantwell and associated military–civilian grievances.

//

//

ORDER – 12

### 2. **Pretext**

The foregoing weaknesses in Plaintiff's prima facie cases notwithstanding, even if the Court could find that Plaintiff had made out at least one prima facie case, thereby shifting the burden to Defendant, Defendant has articulated a legitimate, non-retaliatory reason for its allegedly adverse employment actions. To survive summary judgment, therefore, Plaintiff must raise a genuine issue of material fact that would show that Defendant's reasons were pretextual. Specifically, Plaintiff may show pretext indirectly, by raising a genuine issue of material fact that could show at trial that Defendant's "proffered explanation is unworthy of credence" or directly, by raising a genuine issue of material fact that could prove at trial that unlawful discrimination "more likely" motivated Defendant. Plaintiff cannot meet this burden.

Plaintiff focuses on his assertion that he was acting completely within the standard operating procedure when he and Huff encountered the biker on April 7, 2004. However, Plaintiff was not disciplined for the underlying incident. Accordingly, it is irrelevant that he may have handled that situation perfectly. Further, it is undisputed that an outside complaint precipitated the investigation. Plaintiff cannot therefore argue that the investigation's instigation was pretext for a retaliatory measure. Moreover, it was Plaintiff's failure to cooperate in the administrative investigation once it began that eventually got him the Letter of Reprimand. Plaintiff has presented absolutely no evidence that he was justified in refusing to cooperate and, more importantly, that the Navy was *not* justified in reprimanding him. Notably, the Navy initially suggested suspension but ultimately reduced that penalty to a Letter of Reprimand. As to the "downloading," Plaintiff has presented absolutely no evidence that there was anything unusual about that procedure during an internal investigation. In sum, there is no reason to believe that retaliation "more likely" motivated Defendant and there is no evidence that suggests Defendant's proffered explanation is "unworthy of credence."

Significantly, the issue is whether Defendant's reasons can be believed from Defendant's subjective perspective, not whether Defendant exercised unsound judgment. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (""[A]n employee's subjective personal judgments of her

ORDER – 13

competence alone do not raise a genuine issue of material fact."). Rather, Plaintiff must show that Defendant's stated reasons are merely pretextual. Here, Plaintiff cannot eliminate Defendant's legitimate reasons for conducting the administrative investigation in the way that it did, "downloading" Plaintiff, or issuing Plaintiff the Letter of Reprimand.

Thus, the Court finds that even when all the evidence is viewed in the light most favorable to Plaintiff, he simply cannot show pretext. Because no genuine issue of material fact exists as to Plaintiff's retaliation claims, they both shall be DISMISSED.

### C. Motion to Dismiss Hostile Work Environment Claim

As noted *supra*, failure to file an EEO claim at all is fatal to subject matter jurisdiction under *Lyons*, 307 F.3d at 1103–04. However, failure to include particular issues in a filed claim is treated somewhat differently:

> Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge. In determining whether an allegation under Title VII is like or reasonably related to allegations contained in a previous EEOC charge, the court inquires whether the original EEOC investigation would have encompassed the additional charges.

*Green v. Los Angeles County Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989) (internal quotations and citations omitted). Accordingly, the question here is whether the formal complaint that Plaintiff did file contained enough information to encompass a hostile work environment charge even though only "reprisal" was explicitly claimed.

In the instant case, Plaintiff's formal EEO complaint, upon which a final decision was issued, included no direct allegations of a racially-charged hostile work environment. The language of his EEO complaint notwithstanding, Plaintiff argues that his support of Huff should have put the Navy on notice that he also was alleging a hostile work environment. However, the reference to his May 26, 2004 meeting with Huff and others in his formal complaint was followed by the statement that "ever since these incidents I have been increasingly pressured to comply with this chain of command[']s decision to

ORDER – 14

disregard my rights so I have been discriminated against and falsely accused of wrong doing with no justification or cause." (Def.'s Mot., Mittet Decl. Ex. H.)  Clearly, this language suggests retaliation and not a hostile work environment.  Later in the document, Plaintiff writes that the "command" discriminated against him for "standing by Officer Howard Huff."  (*Id*.)  Again, this suggests retaliation, not a hostile work environment.  Finally, any statements coming close substantively to allegations of a "hostile work environment" relate to the non-protected status of being a "civilian" officer rather than "military" personnel.  These allegations are not actionable.

Because the foregoing was the extent of the EEO complaint and because there was no EEO decision issued regarding hostile work environment, the Court finds that Plaintiff failed to exhaust his administrative remedies because he did not include a claim of hostile work environment in his EEO complaint and he did not write his complaint such that it "would have encompassed the additional charges."  Accordingly, this Court cannot adjudicate a hostile work environment claim, and such claim shall be DISMISSED.

### D.   Motion to Dismiss Emotional Distress Claim

As noted, *supra*, the United States and its agencies have sovereign immunity from all lawsuits unless Congress expressly waives that immunity.  *Blue Fox, Inc.*, 525 U.S. at 260.  Moreover, "[a] federal employee's exclusive remedy to challenge discriminatory employment practices in the federal government" is a Title VII claim pursuant to 42 U.S.C. § 2000e-16.  *Charles v. Garrett*, 12 F.3d 870, 873 (9th Cir. 1993).

The Federal Tort Claims Act ("FTCA") expressly waives sovereign immunity for claims against the United States for personal injury, death, or property damage, 28 U.S.C. § 1346(b), if a private individual in like circumstances would be liable, *id*. § 2674.  The FTCA contains an exhaustion requirement, *id.* § 2675, and a statute of limitations, *id.* § 2401.  Failure to state a valid claim within the constraints of Congress's limited waiver of sovereign immunity in the FTCA deprives this Court of subject matter jurisdiction over the United States (and its branches and agencies) in a FTCA action.  *Id.* §

ORDER – 15

1346(b). Furthermore, FTCA claims are not available to federal employees alleging torts arising out of an employment relationship, and federal courts have no subject matter jurisdiction over such claims. *Saul v. United States*, 928 F.2d 829, 840–43 (9th Cir. 1991).

Plaintiff asserts that the Court should not consider dismissing his tort claim because Defendant did not fully brief this issue in his opening motion. However, subject matter jurisdiction is an issue that may be raised by the Court *sua sponte* and it cannot be waived. Accordingly, the Court finds that Plaintiff's tort claim fails for lack of subject matter jurisdiction because it is preempted as noted in *Saul* and, in any event, Plaintiff has made no allegation that he administratively exhausted any tort claims and he has presented no evidence of exhaustion.

For the foregoing reasons, Plaintiff's emotional distress claim shall be DISMISSED for lack of subject matter jurisdiction.

### III.   CONCLUSION

For the reasons set forth in this Order, (1) Defendant's motion for summary judgment on Plaintiff's retaliation claims (Compl. ¶¶ 4.1, 4.2) is GRANTED; (2) Defendant's motion to dismiss Plaintiff's hostile work environment claim (Compl. ¶ 4.3) is GRANTED; and (3) Defendant's motion to dismiss Plaintiff's tort claim (Compl. ¶ 4.4) is GRANTED. The trial in this matter is STRICKEN, Plaintiff's case is DISMISSED, and the Clerk is DIRECTED to CLOSE this case.

SO ORDERED this 20th day of April, 2007.

John C. Coughenour
United States District Judge

ORDER – 16